AO 91 (Rev. 11/11) Criminal Complaint

**FILED**

AUSA John D. Cooke (312) 353-8788

JAN 19 2018
1-19-18
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MIGUEL DELGADO

CASE NUMBER:

**18 CR 34**

MAGISTRATE JUDGE MASON

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about October 4, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | knowingly and intentionally possessed with intent to distribute a controlled substance, namely, one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

ELIZABETH FERNANDEZ
Special Agent, Drug Enforcement Administration
(DEA)

Sworn to before me and signed in my presence.

Date: <u>January 19, 2018</u>

Judge's signature

City and state: <u>Chicago, Illinois</u>

<u>MICHAEL T. MASON, U.S. Magistrate Judge</u>
*Printed name and Title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS | ss

## **AFFIDAVIT**

I, ELIZABETH FERNANDEZ, being duly sworn, state as follows:

1.      I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed since July 2014.  As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including Title 18, United States Code, Sections 1956 and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952, and 963. I have taken part in electronic surveillance methods and in the debriefing of defendants, informants, witnesses, and others who have knowledge of the distribution, transportation, storage and importation of controlled substances.

2.      I have received training in narcotics investigations, money laundering, financial investigations, and various methods used by drug dealers to conceal and to launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations of violations of narcotics laws.

3.      This affidavit is submitted in support of a criminal complaint alleging that MIGUEL DELGADO violated Title 21, United States Code, Section 841(a)(1) (possessing with the intent to distribute one kilogram or more of heroin). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging DELGADO with possessing with intent to

distribute one kilogram or more of heroin, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

4.    The information set forth in this affidavit is based on, among other things, my personal knowledge; information given to me by other DEA agents and agents and officers with other law enforcement agencies; my review of various reports, documents, and other evidence; and my training and experience.

## FACTS ESTABLISHING PROBABLE CAUSE

5.    On or about October 4, 2017, at approximately 9:20 a.m., DEA agents who were conducting a narcotics and money laundering investigation established surveillance in the area of the apartment building located at 743 N. Swift Road in Addison, Illinois, believed to be the residence of MIGUEL DELGADO. Before that date, DELGADO had become a suspect in the investigation based on judicially authorized interceptions of communications in which DELGADO discussed narcotics-related activity.

6.    At approximately 10:50 a.m. on or about October 4, 2017, law enforcement observed DELGADO,[1] carrying a black leather-like bag over his shoulder, exit the front door of the apartment building. Law enforcement observed that DELGADO also had a bag of trash in one hand and observed DELGADO throw

---

[1] Law enforcement identified DELGADO based on their subsequent encounter with him, as described below.

the bag of trash in a dumpster and then walk towards the center of the parking lot next to the building.

7.    Law enforcement subsequently approached DELGADO as he was entering a black 2014 Mercedes CLC-250 car registered to DELGADO and another individual. Law enforcement identified themselves to DELGADO as law enforcement officers and asked DELGADO whether they could speak with him, to which DELGADO agreed. Law enforcement asked DELGADO his name, and DELGADO identified himself as Miguel DELGADO and provided law enforcement officers with his driver's license, which showed that his name is Miguel A. DELGADO. Law enforcement asked DELGADO whether he lived at 743 N. Swift Road, to which he replied that he did and pointed to one of the apartments on the top floor of the building, later identified as Apartment No. 201, as explained below. Law enforcement asked DELGADO what was in his black bag, which DELGADO had removed from his person and had placed on the front passenger's seat of the Mercedes. DELGADO replied that there was nothing in it. Law enforcement asked DELGADO for permission to search the bag, and DELGADO gave verbal consent to do so.

8.    Upon opening DELGADO's black bag, law enforcement observed two rectangular packages wrapped in brown cellophane, which is consistent with the manner in which narcotics or narcotics proceeds are packaged. DELGADO then told law enforcement that the packages did not contain narcotics but instead contained approximately $40,000 in United States currency. Law enforcement asked DELGADO whether agents could take him back to his apartment and talk to him in

private about where the money came from, and DELGADO agreed. DELGADO then led law enforcement to Apartment No. 201 at 743 N. Swift Road.

9.     On the way up the stairs to DELGADO's apartment, law enforcement asked DELGADO whether agents were going to find anything in the apartment. DELGADO stated that he had approximately 2.5 kilograms of heroin and approximately $6,000 in U.S. currency inside the apartment. Upon reaching Apartment 201, law enforcement knocked and announced themselves at the door and then used the key provided by DELGADO to enter the apartment. Law enforcement conducted a protective sweep of the residence and then brought DELGADO inside and asked him to sit at the dining table. DELGADO stated that the heroin was concealed in the ceiling of the bathroom and that the $6,000 was in the bedroom.

10.   Law enforcement removed a ceiling tile in the bathroom, searched above the remaining tiles, and located three plastic bags containing approximately 2,566.4 grams of a grey powder-like substance that DEA laboratory results confirmed contained heroin. Law enforcement found in the apartment's rear bedroom a metal automobile part, which law enforcement seized and transported to a DEA office, where the auto part was cut open and found to contain a white plastic bag containing approximately 363 grams of a powder-like substance that DEA laboratory results confirmed contained cocaine.

11.   Law enforcement transported DELGADO from his apartment to the Addison Police Department for further processing the same day, on or about October 4, 2017. At approximately 1:59 p.m., law enforcement conducted an audio- and video-

4

recorded interview of DELGADO. Prior to the interview, law enforcement advised DELGADO of his rights, and DELGADO provided law enforcement with oral and written acknowledgment that he understood his rights, that he was willing to waive those rights, and that he was willing to be interviewed by agents.

12.     During the recorded interview, DELGADO told law enforcement, among other things, that, after he had exited his residence earlier that day and had been approached by law enforcement, he spoke willingly with law enforcement and was in possession of $40,000 that did not belong to him. DELGADO stated that he gave law enforcement oral consent to have his apartment searched that day. DELGADO stated also that he worked for a man who would receive weekly shipments of multiple kilograms of cocaine and heroin, that the narcotics would be transported via semi-trucks and would be picked up from truck stops throughout Illinois, and that the truck drivers would be paid for the prior week's narcotics shipment.

## CONCLUSION

13.     Based on the foregoing, I respectfully submit that there is probable cause to believe that, on or about October 4, 2017, in the Northern District of Illinois, Eastern Division, MIGUEL DELGADO did knowingly and intentionally possess with intent to distribute a controlled substance, namely, one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled

5

Substance, in violation of 21 U.S.C. § 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

ELIZABETH FERNANDEZ
Special Agent, Drug Enforcement
Administration

SUBSCRIBED AND SWORN to before me on January 19, 2018.

MICHAEL T. MASON
United States Magistrate Judge

6